# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

VERN A. GUINDON, CAROLE L.
GUINDON,

                        Plaintiffs,                No. 09-11501
                                                Hon. Gerald E. Rosen

vs.

TOWNSHIP OF DUNDEE, *et al.*,

                        Defendants.

_____/

## OPINION AND ORDER GRANTING IN PART
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on       December 23, 2010      

PRESENT:  Honorable Gerald E. Rosen
                      United States District Judge

## I. INTRODUCTION

On April 21, 2009, Plaintiffs Vern and Carole Guindon filed a six-count complaint

against Dundee Township, members of the Township Board, members of the Township

Planning Commission and the Township building inspectors challenging various

decisions taken under local zoning ordinances. Plaintiffs have alleged a variety of federal

and state law claims against the Defendants in their six-count Complaint.[1]

Count I asserts a claim under 42 U.S.C. § 1983. The Guindons claim that

_____

[1] Count VI was a state law defamation claim, which Plaintiffs have voluntarily dismissed
(Pls.' Supplemental Br. 1.)

Defendants deliberately interfered with the Guindons' rights under the Takings Clause of the Fifth Amendment, the First Amendment right to free speech, Due Process Clause of the Fourteenth Amendment, and the Equal Protection Clause of the Fourteenth Amendment. The Guindons also claim that they were retaliated against because they exercised their First Amendment right to petition the government.

Count II sets out a facial challenge to Dundee Township zoning ordinances as unconstitutionally vague.

Count III asserts a claim under 42 U.S.C. § 1985(3). The Guindons allege that Defendants acted with common purpose to deprive the Guindons of their federal rights under the First Amendment, the Due Process Clause, and the Equal Protection Clause.

Count IV asserts a claim under 42 U.S.C. § 1986. The Guindons allege that Defendants failed to prevent or aid in the prevention of the aforementioned constitutional violations.

Count V set outs a claim under the Michigan Right to Farm Act. Essentially, the Guindons assert that the zoning ordinance requiring frontage on a public road to obtain a building permit impermissibly conflicts with the Act by preventing the Guindons from engaging in agricultural activities.

The Guindons seek a declaratory judgment, an injunction, and damages on the theory that Defendants violated their constitutional rights by failing to promptly enforce zoning ordinances against the Guindons' neighbors, by denying them a building permit, and by delaying consideration of their request to transfer land to another municipality.

The action is brought in federal court pursuant to 42 U.S.C. §§ 1983, 1985 and 1986.

Discovery in this matter is now closed. Through the present motion, Defendants seek an award of summary judgment in their favor on all of the Guindons' claims. In support of this motion, Defendants argue that the Guindons have failed to establish any constitutional violations. They claim that the ordinances are not unconstitutionally vague, and that Defendants did not interfere with the Guindons' right to farm. Separately, Defendants argue that Township officials are immune from suit in their individual capacity.

The Guindons have filed a response to Defendants' motion, to which Defendants have failed to reply. Due to inconsistencies between Plaintiffs' complaint and subsequent briefs, on June 11, 2010, the Court ordered Plaintiffs to file a supplemental brief, explicitly outlining the specific factual bases for each of the claims alleged in Counts I, III, IV, and V. Plaintiffs filed their supplemental brief, and Defendants filed a supplemental reply brief.

Having reviewed the parties' submissions in support of and opposition to this motion and the accompanying record, the Court finds that the pertinent facts and legal arguments are fully presented in these written materials and that oral argument would not aid the decisional process. Accordingly, the Court will decide Defendants' motion "on the briefs." *See* Local Rule 7.1(f)(2), U.S. District Court, Eastern District of Michigan. This opinion and order sets forth the Court's rulings on this motion.

## II. FACTS

Vern Guindon and his wife, Carole, are residents of the Township of Dundee in Monroe County, Michigan. They have lived at their current property on Wilcox Road since 1996, and have lived in Dundee Township since 1988. This action arises out of a long-running quarrel, mostly waged between Mr. Guindon and various members of the Township Board of Trustees, over land use of properties adjacent to or near the Guindons' property. The area at issue is an agricultural zoning district.

Defendants Joanna Uhl, Tira Lupu, Linda Sontag, Marilyn Larson, Tom Winkelman, Rollo Juckette and Gary Lazette are elected officials of the Dundee Township Board. Joanna Uhl is the supervisor, and Tira Lupu is the township clerk. Defendants Art Bronson, Jeanette Brockman, Ed Proctor, George Horkey and Chuck Ruehs are members of the Township Planning Commission. Finally, Defendant Robert Madaski is the Township's current building inspector and Defendant Edwin Baranowski is the Township's former building inspector. All individual Defendants are sued both in their individual and official capacities.

## A.    The Hiteshews and The Yorks

In 1999, new neighbors, Charles and Cindy Hiteshew, purchased a lot adjacent to the Guindons' property and began building a house. As construction on the house progressed, Mr. Guindon suspected that the lot would be used to operate a trucking business, given the fact that the Hiteshews previously owned a trucking company at a different location and the way the new house was situated on the parcel. Mr. Guindon shared his suspicion with the Dundee Township building inspector, Edwin Baranowski.

4

By the time the Hiteshew house was complete, the Guindons observed multiple semi-trailers and trucks on their neighbors' property at various times of day involved in what they believed was a full-fledged commercial trucking terminal.

In addition to registering his complaints with the building inspector, Mr. Guindon began speaking during the public comment portion of Township Board meetings in late 1999 and early 2000 about what he suspected were violations of local zoning ordinances.[2] Mr. Guindon complained that multiple trucks were being parked on the property, some rumbling in at early hours of the day, creating noise and a general disturbance. The Hiteshews also hung a sign for their trucking business on their front porch and apparently maintained an office for the business in their house. Although the Township Board instructed Mr. Baranowski and the Township attorney to send violation letters in the ensuing months, by early 2001 the Township had stopped monitoring the situation and the Hiteshews had resumed operation of a trucking terminal.[3] In early 2002, Mr. Guindon

_____

[2] Section 7.2 of the Township Zoning Ordinances provides:

The purpose of the AG-1 Agricultural District is to preserve and protect the Township's supply of prime agricultural land. This district is also established to control the indiscriminate infiltration of urban development into agricultural areas which will adversely affect the agricultural use of land. This district is intended to apply to areas designated as prime farmland in the Agricultural section of the Township Master Plan and areas designated as Agricultural on the Future Land Use Map.

(Pls.' Compl. Ex. 3, at § 7.1.) The Ordinance permits the construction of single-family farm dwellings, homestead residential dwellings, or truck gardening and nurseries. (*Id.* at § 7.2.) Uses not expressly listed as principal permitted uses are not permitted. (*Id.*)

[3] Edwin Baranowski, who served as Dundee Township building inspector during the events in this case (he was later replaced by Bob Madaski), testified that his practice was to talk

hired an attorney to represent his interests. The attorney, W. Thomas Graham, wrote a letter to the Township Board, copying the Township counsel, articulating the severity of the Hiteshews' alleged zoning violations and urging the Board to enforce the appropriate ordinances. In a subsequent Township Board meeting, the Township Superviser, Joanna Uhl, allegedly told Vern Guindon that any further complaints about the Hiteshews would only be heard through his attorney and that he could no longer discuss the matter during the public comment portion of the Township Board meetings.

Eventually, on April 17, 2002, the Township filed a civil action against the Hiteshews in state court. The case resulted in a permanent injunction, issued on August 30, 2002, prohibiting the Hiteshews from operating a truck terminal in the agricultural zoning district.[4] In the months that followed, Mr. Guindon, by and through his attorney, continued to complain at Township Board meetings that the injunction was not being enforced. For example, the sign on the Hiteshews' porch indicating the trucking business remained in place. Mr. Guindon also presented evidence in November 2002 that the Hiteshews had obtained a Michigan Public Service Commission (MPSC) license for the 2003 year to operate a seven-truck terminal and office at their address in Dundee.

Thereafter, Supervisor Uhl stated at a Township Board meeting that the Township

---

to zone ordinance violators first. If they did not comply, he would send them a letter indicating the violation. Finally, if the individual still did not comply, he would bring the violation to the attention of the Township Board or to Tira Lupu, the Township clerk. (Baranowski Dep. 43:10-44:4.)

[4] Sometime after the Township's lawsuit against the Hiteshews was resolved, the Hiteshews sued the Guindons in state court. That case was dismissed as frivolous.

did not have the resources to seek out violations of the zoning ordinances. Rather, the Township would respond only to *specific* complaints made to the ordinance officer. She also questioned whether Mr. Guindon was in fact disturbed by the apparent operation of the office in the Hiteshews' house, if all the trucks were gone from the property. A newspaper account of the January 28, 2003 Township Board meeting, quoted Superviser Uhl responding to Mr. Guindon's request for increased monitoring: "We don't have enough money to press every situation to the limit. . . . We have services to provide. When you came here with a violation before, it was clear how it impacted you; this information [presented to the Township Board] doesn't explain that." (Pls.' Compl. Ex. 14.) Mr. Guindon responded that he would pursue other options.[5] By 2004, the Hiteshews had ceased all operation of the trucking business from their property in Dundee.

In or around late 2002, overlapping with the dispute over the Hiteshew property, Mr. Guindon with other neighbors voiced complaints about land use on a property owned by Mark and Brenda York. The York land is adjacent to the Hiteshews' property and several hundred feet from the Guindons' land. According to Mr. Guindon and the Smiths, neighbors whose land directly abuts the York land, the Yorks were operating a commercial trucking terminal and landscaping supply business from their property in

---

[5] At the February 11, 2003 Township Board meeting, another Dundee resident asked for clarification of Supervisor Uhl's statement. Ms. Uhl said that the Township could not search for every violation. Rather, the Township ordinance officer would only take action when residents make a complaint. (Pls.' Compl. Ex. 15)

violation of zoning ordinances for the agricultural district.  Mr. Guindon and the Smiths

submitted evidence of these allegations to the Township Board.  The Board ultimately

decided to take action in March 2003.  The Board and the Yorks entered into a Letter of

Understanding, whereby the Yorks attested to the fact that their business was not a

commercial trucking business, but rather a nursery as permitted in the agricultural zoned

district.  (Defs.' Mot. for Summ. J. Ex. C.)  Afterwards, Mr. Guindon continued to argue

that the Yorks were violating local zoning ordinances by operating a truck terminal and "a

non-plant landscaping supply business."  (Defs.' Mot. for Summ. J., Ex. 2, Vern Guindon

Dep. 67:8-11.)  Mr. Guindon argued that the Yorks had obtained a MPSC license to

operate a trucking terminal at their property *after* they signed the Letter of Understanding.

Nevertheless, the Township took no further action against the Yorks.

On October 1, 2004, Mr. Guindon sent a letter to Township Board requesting to be

included on the agenda of the October 12, 2004 Board meeting.  Mr. Guindon alleges the

purpose of the request was to find out why only his name was mentioned as a

complainant in the Letter of Understanding with the Yorks, when other residents had also

complained about the Yorks.  The Board denied Mr. Guindon's request to be put on the

agenda.

**B.**     **The Building Permit**

In October 2005, the Guindons purchased an 11.31-acre parcel of land in Dundee

Township from the Monroe County Road Commission for $45,000.  (Pls.' Compl. ¶ 21,

Ex. 1.)  The parcel is located near the Guindons' current property, though not directly

adjacent to it.  It is connected to M-50 by an eighteen-foot wide gravel chip easement and

is zoned for agricultural use.  (Pls.' Compl. Ex. 1.)  In late 2005, the Guindons

approached Mr. Baranowski about obtaining a building permit to construct a house on the

parcel.  The zoning ordinances allow the building of residences on agricultural-zoned

property.[6]  However, Mr. Baranowski denied the request, and later confirmed this denial

in a written letter, because the property did not abut a public street, road or highway as

required by Section 5.11 of the Zoning Ordinances.  (Pls.' Compl. Ex. 29.)[7]

--------------------------------------------

[6]  Section 5.11 provides:

> No dwelling or building shall be erected on any lot or parcel of land in the
> Township of Dundee that does not abut on a public street, road or highway,
> provided that this Ordinance shall not be the basis for preventing the issuance of a
> building permit for the ordinary repair or maintenance of any building that is
> already erected on the date of the adoption of this Ordinance upon a lot or parcel
> of land that does not so abut such a street or highway.

(Pl. Compl. Ex. 29, § 5.11.)  Section 6.5, which governs non-conforming lots of record,
provides:

> In any district in which single-family dwellings are permitted, notwithstanding
> limitations imposed by other provisions of this Ordinance, a single-family
> dwelling and customary accessory buildings may be erected on any single lot of
> record at the effective date of adoption or amendment of this Ordinance.  This
> provision shall apply even though such lots fail to meet the requirements for area
> or width, or both, that are generally applicable in the district, provided that yard
> dimensions and other requirements not involving area or width or both, of the lot
> shall conform to the regulations for the district in which such lot is located.

(Pl. Compl. Ex. 2, § 6.5.)

[7]  Under Article XXI of the Dundee Township Zoning Ordinances, building inspectors
are empowered to grant building, zoning compliance and occupancy permits.  (Defs. Mot. for
Summ. J. Ex. K, at § 21.2.)  Where a building permit is denied, the ordinance requires that the
building inspector state in writing on the application the cause of the denial.  (*Id.*)  Appeals from
a building inspector's decision may be taken to the Zoning Board of Appeals, which has the
power to review decisions taken under the Zoning Ordinances and to grant variances as defined
in the Ordinances.  (*Id.* at § 22.6.)

Jeff Purdy, a land use planner for Dundee Township, stated in a sworn declaration that "[t]he reason the Township elected to adopt an ordinance requiring construction of all residential dwellings on lots abutting a public road, street or highway was to promote the health, safety and welfare of its residents by insuring access to the properties by emergency vehicles."  (Defs.' Mot. for Summ. J. Ex. P, Purdy Decl. ¶ 3.)  When asked what constitutes a public road under the Zoning Ordinances, Mr. Garanowski testified: "You just take it for granted.  A road is a road."  (Garanowski Dep. 69:8.)  Mr. Garanowski's letter further informed the Guindons that they could seek review of the decision by or request a variance from the Dundee Township Zoning Board of Appeals.

## C.    Transfer to Village of Dundee

On January 4, 2007, the Guindons submitted a written request to the Township to have some of their properties (two parcels in total) transferred from the jurisdiction of the Township to the jurisdiction of the Village of Dundee.  Such a transfer would be made pursuant to an agreement under 1984 PA 425, Mich. Comp. Laws § 124.21 *et seq.*, referred to as Act 425.  The Act authorizes the conditional transfer of property between two or more cities, townships, and villages for an economic development project. Mich. Comp. Laws § 124 .22(1).  The Act permits municipalities to engage in a form of annexation by contract.  It is purely discretionary, requiring the agreement of both municipalities.  The Township decided at its January 9, 2008 public meeting, to put negotiations with the Village of Dundee for the land transfer on hold pending resolution

of a lawsuit that Mr. Guindon had filed regarding property close to, but otherwise not

connected to the parcel in the transfer request.  It is unclear whether this was a reference

to the lawsuit challenging the denial of his building permit for the 11.31 acre parcel.

## III.  ANALYSIS

### A.    Standards Governing Defendants' Motion

Under the pertinent Federal Rule, summary judgment is proper "if the pleadings,

the discovery and disclosure materials on file, and any affidavits show that there is no

genuine issue as to any material fact and that the movant is entitled to judgment as a

matter of law."  Fed. R. Civ. P. 56(c).[8]  As the Supreme Court has explained, "the plain

language of Rule 56(c) mandates the entry of summary judgment, after adequate time for

discovery and upon motion, against a party who fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that party

will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.

Ct. 2548, 2552 (1986).

In deciding a motion brought under Rule 56, the Court must view the evidence in a

light most favorable to the nonmoving party.  *Pack v. Damon Corp.*, 434 F.3d 810, 813

(6th Cir. 2006).  Yet, the nonmoving party "may not rely merely on allegations or denials

in its own pleading," but "must-by affidavits or as otherwise provided in [Rule 56]—set

out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).  Moreover,

---

[8]  On December 1, 2010 a new version of Fed. R. Civ. P. 56 took effect.  Due to the
parties' submission of summary judgment motions prior to the effective date, the Court's opinion
and order is decided under and cites the old rule.

any supporting or opposing affidavits "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e)(1). Finally, "the mere existence of a scintilla of evidence that supports the nonmoving party's claims is insufficient to defeat summary judgment." *Pack,* 434 F.3d at 814 (alteration, internal quotation marks and citation omitted).

**B.      Dismissal of the Township Planning Commission Defendants**

Defendants argue that the Planning Commission Defendants were not involved in committing any of the alleged acts that form the basis of Plaintiffs' claims since they have no enforcement power in the Township. Rather, their role is exclusively advisory. Plaintiffs counter that the Township Board always adopts the recommendations of the Planning Commission, so the Commission is *de facto* involved in making significant decisions. Defendants argument is well-taken.

The Michigan Zoning Enabling Act provides that a zoning commission holds public hearings on proposed zoning ordinances and presents a summary of comments received at hearings and proposed zoning ordinances to the local legislative body. Mich. Comp. Laws § 125.3308. A zoning commission also prepares an annual report "on the administration and enforcement of the zoning ordinance and recommendations for amendments or supplements to the ordinance." *Id.* The commission is in no way empowered to enforce zoning ordinances or to compel the adoption of a particular ordinance or amendment.

In this case, Plaintiffs have failed to allege how the Dundee Township Planning Commission or its members violated Plaintiffs' constitutional rights in their purely advisory role. Moreover, Art Bronson, chairperson of the Planning Commission, testified that the Commission does not get involved in enforcement actions (Bronson Dep. 13:3-5), and that the Commission only makes recommendations to the Township Board in cases where an individual seeks special approval of a permit or variance (*Id.* at 13:7-17.) The Guindons have not alleged any facts or proffered any evidence that contravenes this account of the Planning Commission's power, except to claim, without evidentiary support, that the Township Board "always" adopts the Commission's recommendations. This is plainly insufficient. Accordingly, the Planning Commission Defendants shall be dismissed from the action.

## C.    Absolute Legislative Immunity

Defendants argue that the Township Board Defendants, as local legislators, are entitled to absolute immunity for all actions taken "in the sphere of legitimate legislative activity." Plaintiffs counter that the acts complained of—selective enforcement of zoning ordinances, retaliatory denial of a building permit and denial of a request to transfer—fall outside the scope of protected activity. The Court finds that while Defendants are correct to invoke legislative immunity for the Township Board Defendant's legislative acts, not *all* of the acts alleged in Plaintiffs' Complaint can be considered legislative.

Legislators enjoy absolute immunity for what they do or say in legislative proceedings. *See Tenney v. Brandhove*, 341 U.S. 367, 372-76, 71 S. Ct. 783 (1951)

(tracing common law history of absolute legislative immunity). The Supreme Court extended this immunity to *local* legislators in *Bogan v. Scott-Harris*, 523 U.S. 44, 118 S. Ct. 966 (1988), explaining: "Because the common law accorded local legislators the same absolute immunity it accorded legislators at other levels of government, and because the rationales for such immunity are fully applicable to local legislators, . . . local legislators are likewise absolutely immune from suit under § 1983 for their legislative activities." *Id.* at 49. By contrast, legislative officials performing traditionally executive or administrative discretionary functions, however, are entitled to only qualified immunity and are entitled to immunity only if they can establish that the actions were within the scope of their duties and were taken with a reasonable belief that they were lawful. *See Harlow v. Fitzgerald*, 457 U.S. 800, 102 S. Ct. 2727 (1982). Ultimately, Defendants bear the burden of establishing the existence of absolute legislative immunity. *Canary v. Osborn*, 211 F.3d 324, 328 (6th Cir. 2000).

In determining whether an act falls within the sphere of legitimate legislative activity covered by absolute immunity, the Court must consider the nature of the act, rather than "the motive or intent of the official performing it." *Bogan*, 523 U.S. at 54; *see also Tenney*, 341 U.S. at 377 ("The claim of an unworthy purpose does not destroy the privilege."). The proper inquiry is "whether, stripped of all considerations of intent and motive, [the] actions were legislative." *Bogan*, 523 U.S. at 55. The Court considers first, whether the acts were legislative in form, i.e., whether "they were integral steps in the legislative process;" and second, whether a defendant's actions were "legislative in

substance," i.e., whether the actions "bore all the hallmarks of traditional legislation," including whether they "reflected discretionary, policymaking decisions implicating the budgetary priorities" of the government and the services the government provides to its constituents.  *Id.* at 55-56.

The Supreme Court has held that holding investigative hearings is legislative in form.  *Tenney*, 341 U.S. at 377.  Similarly, voting for an ordinance or introducing a budget and signing into law an ordinance are legislative in form.  *Bogan*, 523 U.S. at 55. A legislative committee's "deliberative and communicative processes" has also been held to be a legislative act.  *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 503-04, 95 S. Ct. 1813 (1975).  Finally, a city council is acting in its legislative capacity when it exercises its investigatory power by presiding over a public-comment period.  *Timmon v. Wood*, 633 F. Supp. 2d 453, 459-60 (W.D. Mich. 2008); *see also McGrain v. Daugherty*, 273 U.S. 135, 175, 47 S. Ct. 319 (1927) ("A legislative body cannot legislate wisely or effectively in the absence of information respecting the conditions which the legislation is intended to affect or change.").

Beyond these circumstances, the Sixth Circuit has declined to extend absolute immunity where the act taken is more administrative in nature or where there is evidence of bad faith.  For example, in *Haskell v. Washington Twp.*, 864 F.2d 1266 (6th Cir. 1988), the court considered whether city trustees who used zoning ordinances to block the opening of an abortion clinic were entitled to absolute immunity.  The court explained:

Although zoning is ordinarily a legislative activity, it is not always legislative for purposes of immunity. *See Cutting v. Muzzey*, 724 F.2d 259 (1st Cir. 1984) (Members of a municipal planning board were not entitled to absolute immunity when imposing conditions on a developer because of racial animus.). If the underlying purpose of zoning activity is to establish general policy, then it is legislative. *See Kuzinich v. County of Santa Clara*, 689 F.2d 1345, 1349 (9th Cir. 1982). If, however, "the action 'single[s] out specifiable individuals and affect[s] them differently from others,' it is administrative." *Cutting*, 724 F.2d at 261.

Id. at 1278. Ultimately, the *Haskell* court remanded the case without deciding whether the city trustees had acted within the scope of legislative immunity. Instead, it ordered the lower court to "examine all of the alleged injurious conduct of the Trustees and characterize each action as either administrative, legislative, or outside the scope of either." *Id.*

In this case, the parties dispute whether the actions at issue were legislative in nature. Defendants argue that adopting a zoning ordinance is a quintessentially legislative act. Moreover, "failing" to enforce an ordinance is similarly legislative in nature. Plaintiffs counter that they do not challenge the adoption of zoning ordinances *per se*. Rather, they argue that Defendants were not acting in a legislative capacity when they selectively enforced (or failed to enforce) zoning ordinances against the Hiteshews and the Yorks, and when they delayed addressing the transfer of Plaintiffs' land to the Village of Dundee.

The Township Board Defendants' acts taken to enact or amend zoning ordinances were unquestionably legislative in nature. *See Bogan*, 523 U.S. at 55; *see also Tucker v. City of Richmond*, 388 F.2d 216, 224 (6th Cir. 2004) (holding that "[a]bsolute immunity

extends to local mayors who are acting in official 'legislative capacity,' and passing an ordinance is an example of an action taken in official capacity"); *see also Bogan*, 523 U.S. at 45 (noting that voting on an ordinance is "quintessentially legislative"). Under Michigan law, "[t]he power to zone and rezone property is a legislative function." *Essexville v. Carrollton Concrete Mix, Inc.*, 259 Mich. App. 257, 673 N.W.2d 815, 819 (Mich. Ct. App. 2003). In addition, acts taken to oversee and guide the public comment period, as well as decisions not to place Vern Guindon on the agenda, were "legislative acts" because those efforts were taken to advance the legislative body's fundamental lawmaking function. *See Shields v. Charter Tp. of Comstock*, 617 F. Supp. 2d 606, 619 (W.D. Mich. 2009).

By denying the Guindons' building permit request and not taking action against the Hiteshews and Yorks for the presence of trucks on their property, the Township Board chose to enforce zoning ordinance 5.11 but not ordinance 7.2. Enforcement of zoning ordinances falls within the legislative power of the Township Board Defendants, and they are entitled to absolute immunity on claims related to enforcement. *Randall v. Delta Charter Township*, 121 Mich. App. 26, 328 N.W.2d 562 (1982) (holding that father's claim that township's failure to enforce zoning ordinance to abate alleged nuisance of maintaining inlet in which his son drowned was barred by governmental immunity). The Court does not find that this discretionary enforcement of two different ordinances falls into Plaintiffs' category of "selective enforcement", which would exist if the Defendants enforced the same ordinance against Plaintiffs but not the Hiteshews or Yorks. *See*

*Cutting*, 724 F.2d at 261 (holding that singling out specific individuals and affecting them differently than others is an administrative action). Although Plaintiffs claim that the Defendants granted building permits to other landowners to build on private roads and prevented Plaintiffs from building a barn, they cite no examples or evidence to support these mere allegations.

The Township Board's decision to delay processing of the Guindons' request for a transfer of their property may, however, qualify as administrative, rather than legislative in nature. *Bryan v. City of Madison*, 213 F.3d 267, 273 (5th Cir. 2000) (holding that mayor's decisions to delay the city board's approval of proposed development plans at various board meetings was non-legislative because "[t]he point at issue in those meetings was specifically and particularly related to the proposed development"); *but see Biblia Abierta v. Banks*, 129 F.3d 899, 905-06 (7th Cir. 1997) (holding that aldermen's requests for postponement of zoning board hearings pending action on constitutionality of ordinances were entitled to legislative immunity).

Based on the foregoing, all claims related to the passage or enforcement of a zoning ordinance or the management of Township board meetings brought against the Township Board Defendants shall be dismissed by reason of absolute legislative immunity. For the remaining claims—claims which arise from the Township Board Defendants' executive or administrative discretionary functions related to the delay in processing Plaintiffs' land transfer request—the Township Board and building inspector

Defendants are entitled only to qualified immunity.  These claims are discussed in further detail below.

**D.     42 U.S.C. § 1983 Claims**

In Count I of the Complaint, the Guindons raise claims under 42 U.S.C. § 1983. To succeed on a cause of action under 42 U.S.C. § 1983, a plaintiff must establish that: 1) he was deprived of a right secured by the federal Constitution or laws of the United States; and 2) the deprivation was caused by a person acting under color of state law.  42 U.S.C. § 1983; *Flagg Bros. v. Brooks*, 436 U.S. 149, 155-57, 98 S. Ct. 1729 (1978); *Ziegler v. Aukerman*, 512 F.3d 777, 782 (6th Cir. 2008).  Here, the parties do not dispute that Defendants are state actors.  Thus, the primary issue before the Court is whether the Guindons have established that they were deprived of a right secured by the Constitution or by federal laws.

**1.   Retaliation for Freedom of Speech**

The Guindons allege that the Defendants' retaliated against them for their exercise of their First Amendment rights to petition the government and to seek redress through the courts.  Specifically, the Guindons claim that Defendants "engaged in retaliatory behavior . . . by denying their . . . land transfer requests, denying them access to review of these decisions, and directing third parties not to deal with [Vern Guindon], thereby ensuring that he has not worked since July, 2009."  (Pls.' Resp. at 20.)

Federal courts in this circuit evaluate claims that state actors retaliated against a claimant in response to his or her exercise of free speech under the framework generally

set forth in *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 97 S. Ct. 568 (1977). Under *Mount Healthy* and its progeny, a plaintiff must show that (1) he was participating in a constitutionally protected activity; (2) defendant's action injured plaintiff in a way "likely [to] chill a person of ordinary firmness from" further participation in that activity; and (3) in part, plaintiff's constitutionally protected activity motivated defendant's adverse action. *Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir. 1998) (internal citations omitted); *see also Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). Once a plaintiff raises an inference that the defendant's conduct was motivated in part by plaintiff's protected activity, the burden shifts and defendant "can demonstrate that it would have taken the same action in the absence of the protected activity." *Arnett v. Myers*, 281 F.3d 552, 560-61 (6th Cir. 2002) (citing *Thaddeus-X*, 175 F.3d at 399). The inquiry of "whether activity is 'protected' or an action is 'adverse' " is context-specific. *Thaddeus-X*, 175 F.3d at 388.

There does not appear to be a question that the Guindons' actions were at all times constitutionally protected activity. The Court thus evaluates the second and third elements of the First Amendment retaliation framework for each of the claimed injuries suffered by the Guindons.

### a. Delay of land transfer request

The Guindons argue that Defendants retaliated against them, by refusing to act on Plaintiffs' land transfer request solely because Plaintiffs' had filed a state law suit against the Township. Defendants admit that the pending litigation in state court regarding

20

eleven acres of land, which adjoined the land to be transferred, was a factor in the Township's decision to delay approving the request (Defs.' Supplemental Br. 8.) Defendants maintain, however, their decision to delay was based on the potential impact the pending litigation could have on the uses of the Guindons' land and not simply because the Guindons had filed suit against them.

The Court finds merit in Defendants' argument. The Guindons provide no support to show that Defendants were motivated by the filing of suit itself, rather than the impact of the law suit on the uses of land adjoining the Guindons' land to be transferred. Because approval of a land transfer request is purely discretionary, Defendants had every right to delay or even deny Plaintiffs' request. Although specifics regarding the pending state law suit are not provided by either party, the outcome of the law suit would determine what the adjoining property could be used for and what structures could be built on it. Land transfers between the Township and Village require the approval of both municipalities. The authorized uses of adjoining property would certainly be a factor two municipalities would cconsider before agreeing to transfer land, and therefore, it is very reasonable that the Township would await resolution of the state suit before entertaining a land transfer request. Additionally, the Court does not find that a delay in deciding a land transfer request would chill a person of ordinary firmness from exercising their First Amendment right to seek redress through the courts. Therefore, the Court concludes Plaintiffs have failed to establish both the second and the third factors required under *Mount Healthy* for this claim.

### b. Denial of review

Although Plaintiffs claim that the Township Board refused to take any action on Plaintiffs' three separate written requests for review of the denial of their building permit, Plaintiffs' fail to provide the Court with copies of the requests or other supporting facts to show these requests were ever made. The Court dismisses this claim as factually unsupported.

### c. Directing third parties not to deal with Vern Guindon

The Guindons next argue that Defendants retaliated against them by directing third parties not to do business with Mr. Guindon because he had filed suit against Defendants. Mr. Guindon claims he has not been able to work since July 2009 because of Defendants' retaliation. The only evidence presented in support of the Guindons' claim is an affidavit by David C. Hoffman. The portions of the affidavit which would support a claim for retaliation are based on statements allegedly made by an unidentified Village employee. Mr. Hoffman claims the Village employee told him that the Village and Township instructed another resident family "to get rid of Vern or else they would not be getting jobs around here . . . because Vern had a lawsuit against the Township." (Pls.' Supplemental Br. Ex. 19.) Affidavits opposing a motion for summary judgment "must . . . set out facts that would be admissible in evidence. Fed. R. Civ. P. 56(e)(1). The out of court statements by an anonymous Village employee are submitted to prove the matter asserted, and therefore are inadmissable hearsay under Fed. R. Civ. P. 801, 802. Because

the inadmissible statements in Mr. Hoffman's affidavit are the only support offered by Plaintiffs, the claim for retaliation is dismissed.

**2. Violation of Equal Protection for Failing to Grant Land Transfer Request**

In addition to the retaliation claim, the Guindons claim Defendants denied them equal protection of law, because Defendants "granted every other land transfer request ever presented to them." (Pls.' Supplemental Br. 11.) "To state an equal protection claim, a party must claim that the government treated similarly situated persons differently." *Braun v. Ann Arbor Tp.*, 519 F.3d 564, 574 (6th Cir. 2008). Even assuming all other land transfer requests by Dundee residents were granted, Plaintiffs provide no factual support or analysis to show that the other residents were situated similarly to the Guindons. In fact, as the Court previously explained in its analysis of the retaliation claim, the delay in processing Plaintiffs' land transfer request was due to pending litigation between the parties in state court. There is absolutely no evidence to support the claim that any other resident who was involved in a lawsuit with the Township was granted a land transfer request, and therefore, Plaintiffs fail to establish a claim under the Equal Protection Clause.

**3. Plaintiffs' Due Process Claims**

Having dismissed the grounds for the above claims related to the land transfer request, building permit, public comment portion of the Township's meetings, and enforcement of the zoning ordinances, the Court finds Plaintiffs have failed to provide any additional factual bases to support their substantive and procedural due process

claims.  Additionally, because the Court has dismissed all claims asserting violations of Plaintiffs' individual constitutional rights, it need not address the Defendant building inspectors' defense of qualified immunity.

**E.    42 U.S.C. §§ 1985(3), 1986 Claims**

In Counts III and IV of their complaint, Plaintiffs claim Defendants conspired with each other to deprive Plaintiffs' of their constitutional rights and failed to prevent wrongful constitutional conspiracy.  Defendants cite *Ctr. for Bio-Ethical Reform, Inc. V. City of Springboro*, 477 F.3d 807 (6th Cir. 2007), in their motion and argue that the absence of any constitutional violations defeats any claim of conspiracy, and subsequently, no cause of action for failing to prevent a conspiracy can exist absent the conspiracy itself.  Plaintiffs fail to respond to Defendants argument other than simply claiming that the factual bases which support Count I also support Counts III and IV. (Pls.' Supplemental Br. 14.)

Although the Court does not base its ruling on Defendants' interpretation of *Springboro,* it dismisses Counts III and IV based on other reasoning from the same opinion. "[C]onspiracy claims must be pled with some degree of specificity and . . . vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim." *Springboro,* 477 F.3d at 832 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)).  Because Plaintiffs have failed to allege any facts to support the claim that Defendants entered into an agreement to deprive Plaintiffs of their rights, the claims under both §§ 1985(3) and 1986 are properly dismissed.

24

**F.      Facial Challenge to Zoning Ordinance**

In Count II, the Guindons claim that sections of the Township zoning ordinance related to the building of structures are unconstitutionally void for vagueness.  "[A]n enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 2298 (1972).  "[L]aws must provide specific standards for those who apply them." *Id.*  Although Plaintiffs claim that the sections of the ordinance relating to "buildable lots" and "area requirements" conflict with each other, the Guindons do not explain or provide any factual support for the alleged conflict.  Therefore, the Court grants summary judgment in favor of Defendants on this portion of the ordinance and turns its focus to Plaintiffs' claim that the terms "public street, road or highway" in ordinance 5.11 are unconstitutionally vague.

An ordinance as written must "give a person of ordinary intelligence a reasonable opportunity to understand what is prohibited, so that he may act accordingly." *Id.* at 108-109.  "Terms used in a municipal ordinance must be given their plain and ordinary meanings." *Great Lakes Soc. v. Georgetown Charter Twp.*, 281 Mich.App. 396, 761 N.W.2d 371 (2008).  Here, section 5.11 of the ordinance prohibits erecting any dwelling or building, which does not abut a "public street, road or highway."  Plaintiffs have access to their property by means of an asphalt chip right-of-way, which is connected to M-50, and Defendants decided this right-of-way did not qualify as a public road under section

5.11. Plaintiffs argue that the ordinance does not provide definitions or guidelines as to what constitutes a "public street, road or highway."

Plaintiffs' building request was not denied based on the construction of their right-of-way, but rather because their planned construction failed to abut a *public* road. A person of ordinary intelligence can certainly understand that the use of the terms "public road" in the ordinance clearly prohibited construction of a dwelling which only abutted a *private* right-of-way. The Court agrees that there are no guidelines within the ordinance detailing whether special improvements, certain materials, or certain dimensions must be applied for a route to qualify as a road under the ordinance. Although there may be the potential for a person of ordinary intelligence to not understand the exact requirements of a road's construction, there is no ambiguity to the term "public" used in section 5.11. "A Plaintiff who engages in some conduct that is clearly proscribed cannot complain about the vagueness of the law as applied to the conduct of others." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495, 102 S.Ct. 1186, 1191 (1982). Because Plaintiffs' planned construction abutting a private right-of-way is clearly prohibited by the statute regardless of road construction, they cannot bring a vagueness claim based on hypothetical plaintiffs who may not understand the construction requirements of a road itself.[9] For these reasons, Count II of the complaint is dismissed.

### E.    Right to Farm

---

[9] Additionally, Plaintiffs provide no evidence that other Township residents had difficulty understanding any portion of the zoning ordinance.

Finally, Plaintiffs claim that Defendants violated the Michigan Right to Farm Act, Mich. Comp. Laws § 286.471 *et seq*., by restricting Plaintiffs' use of their property for farming purposes. Specifically, Plaintiffs claim that Defendants would not allow Plaintiffs to build a barn. As stated earlier in this opinion, the Court has found no evidence which shows Defendants ever told Mr. Guindon that he could not build a barn. A review of the response letters sent to Mr. Guindon from Defendant building inspector Edwin Baranowski on January 5, 2006, state that Mr. Guindon's development requests were denied for failure to meet the requirements of section 5.11 of the zoning ordinance. Plaintiffs do not provide copies of their development requests, and there is no evidence that these requests were related to the construction of a barn. In fact, the January 2006 date of the letters correspond with Mr. Guindon's late 2005 request to build a *house* on their parcel, which would be subject to the restrictions in section 5.11.

Plaintiffs cite selective portions of Defendant Baranowski's and Defendant Bronson's depositions to persuade the Court to believe that these defendants prevented Mr. Guindon from building a barn. A thorough review of their testimony, however, reflects their belief that if Mr. Guindon had in fact requested to build a barn on his property, such a request would have been approved. Because the Court finds no evidence in the record supporting the claim that Mr. Guindon ever submitted a such a request in the first place, further analysis of the Michigan Right to Farm Act is unnecessary.

## IV. CONCLUSION

For all the reasons set forth above in this Opinion and Order, and the Court being otherwise fully advised in the premises,

IT IS HEREBY ORDERED that Defendants' motion for summary judgment [Dkt. #32] is GRANTED and Plaintiffs' complaint is DISMISSED in its entirety.


s/Gerald E. Rosen
Chief Judge, United States District Court

Dated: December 23, 2010


I hereby certify that a copy of the foregoing document was served upon counsel of record on December 23, 2010, by electronic and/or ordinary mail.

s/Ruth A.Gunther
Case Manager
(313) 234-5137